UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CANTERS DELI LAS VEGAS, LLC, *et al.*, | Case No. 2:18-cv-1908-KJD-GWF |
| Plaintiffs, | **ORDER** |
| v. | |
| BANC OF AMERICA MERCHANT SERVICES, LLC, *et al.*, | |
| Defendants. | |

There are three motions pending before the Court. The first is a motion to dismiss or, in the alternative, to transfer venue (#10), filed by defendant FreedomPay, Inc. The second is a motion to dismiss under Rule 12(b)(3) for improper venue (#12), filed by defendants Banc of America Merchant Services, LLC and Bank of America, N.A.[1] The Court construes both motions as motions to transfer venue under 28 U.S.C. § 1404(a).[2] Plaintiffs Canters Deli Las Vegas, LLC and Canters Deli Tivoli Village, LLC filed a consolidated opposition to the two motions (#20). FreedomPay (#24) and Bank of America (#27) replied.

Also before the Court is FreedomPay's freestanding motion to transfer venue to the Eastern District of Pennsylvania (#30), which it filed to correct a procedural defect in its original motion to dismiss. Canters Deli responded (#31), and FreedomPay replied (#32). Although Bank of America's motion to dismiss suffers from the same procedural defect as FreedomPay's first

---

[1] Except where otherwise necessary, the Court will refer to Banc of America Merchant Services and Bank of America collectively as "Bank of America" or "processors." It will likewise refer to both Canters Deli plaintiffs as "Canters Deli."

[2] Although the motions to dismiss do not cite the appropriate venue statute, see 28 U.S.C. § 1404(a), both Bank of America and FreedomPay consent to transfer this case in place of dismissal. See Def.'s Reply 2, ECF No. 27 (Bank of America will "readily agree to [transfer] as an alternative to dismissal"); Def.'s Reply 4, ECF No. 24 (FreedomPay consenting to transfer the case if the Court elects to construe their motion to dismiss as a motion to transfer venue under § 1404(a)).

motion, it has not filed a motion to transfer venue.

This is a dispute between a deli and its credit card processors over missing credit-card deposits. In June of 2018, non-party Mikhail Siretskiy allegedly siphoned thousands of dollars of Canters Deli credit-card proceeds to his own checking account by designating that account as the payee account for Canters Deli credit card deposits. Whether Siretskiy was authorized to reroute those funds is the subject of a corresponding state-court case. This case will determine whether Bank of America and FreedomPay are liable for the missing funds.

These motions present the narrow issue whether Canters Deli may sue Bank of America and FreedomPay in this district when the credit card processors' terms of service explicitly designate other forums to resolve such disputes. If those forum selection clauses are enforceable, and if the clauses apply to Canters Deli's claims, the Court must transfer the case to the designated forums absent extraordinary circumstances. For the reasons below, the Court finds that the forum selection clauses here are valid, and there is no evidence of extraordinary circumstances that warrant departure from the terms of the parties' respective agreements. Accordingly, the Court grants FreedomPay and Bank of America's respective motions to dismiss, which the Court has construed as motions to transfer venue.

**I.      Background**

Until recently, Canters Deli owned and operated two locations in Las Vegas. Both locations used Bank of America's merchant-card processing services, which allowed the deli to accept credit and debit cards. Compl. 3, ECF No. 1. For its part, Bank of America was responsible for facilitating credit- and debit-card sales, batching those payments, and depositing the batches into a Canter Deli deposit account. The delis' respective processing agreements with Banc of America Merchant Card Services are governed by two documents: The Merchant Processing Application and Agreement and the "Program Guide." Def.'s Mot. Dismiss 2, ECF No. 12. The bank refers to these documents collectively as "the Agreement." Id. Among other things, the Program Guide set out the operating procedures for the merchant-card program, disclosed the fee schedules for the various services, and outlined the terms and conditions of the merchant-card agreement. See Program Guide 1, ECF No. 12-1.

The terms and conditions included a forum-selection clause and a choice-of-law clause. Those clauses designated North Carolina as the bank's preferred forum for "any actions or claims arising under or related to [the merchant-services] Agreement." Program Guide 48, ECF No. 12-1. Specifically, the bank elected the Charlotte Division of the Western District of North Carolina as the only acceptable forum to litigate disputes arising out its agreement with Canters Deli. Id.

In June of 2017, Canters Deli contracted with FreedomPay, a third-party "switcher," to act as an intermediary between the deli and Bank of America. Def.'s Mot. Dismiss 2, ECF No. 10. The deli signed a "Switching Agreement" with FreedomPay that outlined the switcher's services and associated costs. Id. at 2–3. The Switching Agreement also contained a forum-selection clause and a choice-of-law clause. Those clauses designated the Eastern District of Pennsylvania—and Pennsylvania law—as the only acceptable forum and governing law for "any action by the Parties relating to or arising in whole or part under or in connection with [the Switching] Agreement." Def.'s Mot. Dismiss 19, ECF 10-1.

In June of 2018, Mikhail Siretskiy managed to designate his personal checking account as the deposit account for the Canters Deli credit card deposits. Compl. 4–5, ECF No. 1. At the time, Siretskiy held an "indirect" interest in the deli. Id. at 3. Before Siretskiy connected his checking account to the merchant-service account, he had to obtain certain verifications. These verifications—known as a VAR Sheet—came from Banc of America Merchant Services. Id. The VAR Sheet contained the merchant-services identification numbers and corresponding deposit account numbers of Canters Deli's merchant accounts. Id. Siretskiy used the VAR Sheet to connect his own checking account to the merchant-services account and divert "tens of thousands of dollars" of batched credit card deposits away from Canters Deli. Id. at 5. Canters Deli claims that Siretskiy lacked authority to reroute those funds and has sued him in state court. Id.

In addition to its state-court case, Canters Deli sued Bank of America and FreedomPay in this Court for their failure to prevent Siretskiy's alleged scheme. Both defendants move to dismiss under Rule 12(b)(3) for improper venue, citing the forum selection clauses in their

respective terms of service. In its response, Canters Deli argued that a motion to dismiss is improper where, as here, venue would be proper but for the forum selection clause. Both defendants have since consented to transfer instead of dismissal, and FreedomPay has filed an alternative motion to transfer venue under 28 U.S.C. § 1404(a). The motions have been fully briefed and are ripe for decision.

## II. Legal Standard

In a civil action, venue is proper if it falls into one of three categories under 28 U.S.C. § 1391(b). Section 1391(b) allows an action to proceed in the desired venue if: (1) every defendant resides in the state where the federal district is located; (2) a substantial part of the events or omissions giving rise to the claim occurred in that federal district; or if no other federal district is appropriate, (3) venue is proper in any district where any defendant is subject to the Court's personal jurisdiction. Id. § 1391(b)(1)–(3). Where there is a dispute over venue, the Court looks to 28 U.S.C. §§ 1404(a) and 1406(a) to determine whether to transfer or dismiss the case. Section 1406 applies where venue is improper or wrong under the § 1391(b) factors. It allows the Court to dismiss the case or transfer it to a federal district where the case could have been brought. 28 U.S.C. § 1406(a). Section 1404(a), on the other hand, allows the Court to transfer a case filed in an appropriate venue if it is "in the interest of justice." Section 1404(a) codified the doctrine of forum non conveniens, which allows transfer from an otherwise proper venue if the defendant meets the "heavy burden in opposing the plaintiff's chosen forum. Sinochem Intern. Co. Ltd. v. Malyasia Intern. Shipping Corp., 549 U.S. 422, 430 (2007).

The presence of a valid forum-selection clause alters the analysis because the clause represents the parties' prior agreement on the acceptable forum. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988). However, the forum-selection clause itself has no bearing on the appropriateness of the plaintiff's selected forum. In fact, whether the venue is "wrong or improper" depends entirely upon whether the case satisfies one of the three venue conditions in § 1391(b). Atl. Marine Const. Co., Inc. v. U.S Dist. Ct. for W. Dist. Of Tex., 571 U.S. 49, 55 (2013) (internal quotations omitted). Accordingly, when a party challenges venue, the Court must first determine whether the plaintiff's chosen venue is proper under § 1391(b). If the venue

does not meet one of § 1391(a)'s three categories, it is improper, and the Court must dismiss the case under § 1406(a). <u>Atl. Marine</u>, 571 U.S. at 56. If the plaintiff's selected venue is proper under § 1391(b), but the forum-selection clause designates a different forum, Rule 12(b)(3) and § 1406 do not apply. The Court is left with § 1404(a)'s forum non conveniens analysis. <u>Id.</u>

Generally, the Court will transfer those cases to the agreed-upon forum absent extraordinary circumstances. <u>Atl. Marine</u>, 571 U.S. at 62 quoting <u>Stewart</u>, 487 U.S. at 31 ("a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases"). Three factors control whether the Court should honor the forum-selection clause and transfer the case. First, the plaintiff's choice of forum is irrelevant. <u>Id.</u> at 63; <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 635 (1964). A plaintiff surrenders its so-called "venue privilege" when it agrees to sue in one specific forum. <u>Atl. Marine</u>, 571 U.S. at 63–64. Presumably, the plaintiff bargained for some benefit in exchange for the forum-selection clause. In so doing, the plaintiff "effectively exercised its 'venue privilege' before a dispute [arose]." <u>Id.</u> at 63. Accordingly, the Court need only defer to the plaintiff's first choice for venue, which is found in the forum-selection clause.

Second, the Court does not consider the parties' private interests. Like venue preference, the plaintiff waives its right to contest any inconvenience it may face litigating in the forum it already agreed to. <u>Id.</u> at 64. The Court must interpret the private-interest factors in favor of the preselected venue. <u>Id.</u> After all, "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." <u>The Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 17–18 (1972). As a result, the Court will only consider the public's interest in rejecting the forum-selection clause. However, these considerations "will rarely defeat a transfer motion." <u>Atl. Marine</u>, 571 U.S. at 64.

Finally, if the Court determines transfer is appropriate because of the forum-selection clause, the case will not retain the transferor-district's choice-of-law rules. Generally, when a court employs § 1404(a) to transfer a case to a more convenient forum, the transferee court applies the choice of law provisions from the original forum. <u>See Van Dusen</u>, 376 U.S. at 639. By attaching the original forum's choice of law provisions to the case, parties are less inclined to

use § 1404 to shop for a more amenable forum. Id. at 638. However, where the plaintiff has defied a valid forum-selection clause, it loses the right to any "state-law advantages" it would have received in the contested forum. Atl. Marine, 571 U.S. at 65. And so, if the Court transfers this under § 1404(a), it will shed Nevada's choice-of-law rules en route to the appropriate forum.

### III. **Analysis**

Both Bank of America and FreedomPay seek to enforce the forum-selection clauses in their respective agreements with Canters Deli. They ask the Court to dismiss Canters Deli's claims or, in the alternative, to transfer this case to their preselected forums. Canters Deli, on the other hand, asks the Court to deny the motions because they were improperly filed. The deli argues that the motions invoke the wrong procedural mechanism—Rule 12(b)(3) instead of 28 U.S.C. § 1404(a)—and therefore must be denied. Alternatively, Canters Deli argues that the forum-selection clauses are either unreasonable or unenforceable.

   *A. The Court Will Construe These Motions to Dismiss as Motions to Transfer Venue Under 28 U.S.C. § 1404(a)*

As an initial matter, the Court finds that it is appropriate to construe Bank of America and FreedomPay's motions to dismiss as motions to transfer venue under § 1404(a).[3] Canters Deli is correct that Atlantic Marine dictates that 28 U.S.C. § 1406 and Rule 12(b)(3) are not the correct vehicles to enforce a forum-selection clause. 571 U.S. at 52. However, in the interest of judicial efficiency, the Court will not let a mere technical deficiency in the processors' papers delay a ruling on the validity of the forum-selection clauses. This is especially the case where, as here, the Court would grant the parties leave to refile motions to transfer. See Simons v. United States, 497 F.2d 1046, 1049 n.2 (9th Cir. 1974) (where amendment would be allowed, technical

---

[3] Although Atlantic Marine clarified that 28 U.S.C. § 1404(a) was the proper procedure to enforce a forum selection clause, it was silent on whether a party's incorrect use of FRCP 12(b)(3) and 28 U.S.C. § 1406 warrants denial on its own. See 571 U.S. at 52. Various district courts have confronted the issue to conflicting results. Compare Casanola v. Delta Mach. Ironworks, LLC, No. 18-9377, 2019 WL 2076190 (E.D. La. May 10, 2019) (construing motion to dismiss under 12(b)(3) as a motion to transfer venue under § 1404(a) and transferring the case); Ann Le v. MBF Leasing, LLC, No. 2:15-cv-861-JCM(GWF), 2016 WL 1238230 (D. Nev. Mar. 29, 2016) (construing the motion to dismiss as a motion to transfer under § 1404(a) and dismissing the case); Mogannam v. First Fin. Merch. Svcs., No. 15-cv-0827-TLN-CKD, 2016 WL 561813 (E.D. Cal. Feb. 12, 2016) (construing a 12(b)(3) motion to dismiss as a motion to transfer and transferring the case) with JP Morgan Chase Bank, N.A. v. Trade Show Fabrications West, Inc., No. 2:12-cv-0554-GMN-CWH, 2014 WL 347476 (D. Nev. Jan. 29, 2014) (declining to construe motion to dismiss as a motion to transfer under § 1404(a) but granting leave to amend).

deficiencies in a pleading should not prevent the Court's decision).

Additionally, Canters Deli is not prejudiced by construing the motions to dismiss as motions to transfer. Canters Deli had ample opportunity to defend against a transfer in its opposition. In fact, the deli spent much of its opposition arguing that transfer is not warranted even if the § 1404(a) factors applied. Pl.'s Consol. Resp. 6–9, ECF No. 20. And while the processors did not move to transfer initially, they have both consented to transfer and have raised sufficient argument to apply the § 1404(a) factors. Accordingly, the Court will not deny Bank of America and FreedomPay's motions to dismiss solely because they invoked the incorrect procedural mechanism to enforce their forum-selection clauses. Instead, the Court will construe their motions as motions to transfer under § 1404(a).

    *B. These Forum-Selection Clauses are Valid and Enforceable*

The Court's first step in the § 1404(a) analysis is to determine whether the disputed forum-selection clauses are valid and enforceable. The clauses are enforceable if they were reasonably communicated to Canters Deli and if they apply to the claims the deli brings against each processor. If the forum-selection clauses satisfy those two prongs, the Court will proceed to the three factors outlined in Atlantic Marine to determine whether transfer is appropriate. 571 U.S. at 62–66.

To start, forum-selection clauses are presumptively valid. Bremen, 407 U.S. at 10; Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004). The Court assumes that the parties bargained for the clause and agreed to litigate in the chosen forum. As a result, a forum-selection clause will stand unless the plaintiff shows: (1) that the incorporation of the clause was the product of fraud, undue influence, or overwhelming bargaining power; (2) that the level of unfairness or inconvenience to litigate in the chosen forum would effectively rob the plaintiff of its day in court; or (3) that enforcing the clause would contravene a strong public policy in the forum state. Bremen, 407 U.S. at 12, 15, 18; Microsoft Corp. v. Motorola, Inc., 696 F.3d 872, 884–85 (9th Cir. 2012).

    *1. Bank of America's Forum-Selection Clause*

The Court turns first to Bank of America's forum-selection clause, which designates the

Western District of North Carolina as the only acceptable forum. The bank's merchant services agreement is governed by the "Program Guide." See Program Guide 3, ECF No. 12-1 ("The Merchant Agreement contained in Parts I and IV of this Program Guide, your Merchant Processing Application and the schedules thereto . . . contain the terms and conditions" of the agreement between the bank and Canters Deli"). The Program Guide sets out the operating procedures and general terms of the merchant services agreement. Id. at 2. Those terms included forum-selection and choice-of-law clauses at Section 51.1 and 51.2. The Guide provides:

> 51.1. Choice of Law. Our Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina (without regard for its choice of law provisions).
>
> 51.2. Venue. The exclusive venue for any actions or claims arising under or related to this Agreement shall be in the courts of the State of North Carolina and the United States for the Western District of North Carolina, Charlotte Division, located in Charlotte, North Carolina.

Id. at 48. The Program Guide's table of contents—at page one of the Guide—discloses both the choice-of-law and forum-selection clauses. The clauses themselves appear on page forty-eight.

Canters Deli does not dispute that the Program Guide governs the terms and conditions of its merchant services agreement with Bank of America. Instead, the deli argues that the forum-selection and choice-of-law clauses are invalid because the bank failed to reasonably communicate the terms to Canters Deli. Alternatively, Canters Deli contends that, even if the terms were reasonably communicated, exceptional circumstances exist that allow the Court to disregard both the bank's and FreedomPay's forum-selection clauses.

A party seeking to enforce a forum-selection clause must have reasonably communicated the clause to the adverse party. Carnival Cruise Lines, Inc. v. Shute, 499 U.S 585, 590 (1991). Canters Deli argues that Bank of America failed to reasonably communicate its forum-selection clause because the clause appeared in a voluminous document full of dense text, the clause was not highlighted or emphasized in any way, and because the clause was in a separate document from the agreement the parties signed. Pl.'s Consol. Resp. 6–7, ECF No. 20. As a result, the deli argues that Bank of America's forum-selection clause is invalid.

The deli points to Mason v. CreditAnswers, LLC for support. No. 07cv1919-L(POR),

2008 WL 4165155 (S.D. Cal. Sept. 5, 2008). There, a California district court concluded that a forum-selection clause was unenforceable because CreditAnswers failed to provide adequate notice of the clause. Id. at *2. The Court also found that the clause would "effectively deprive [the plaintiff] of his day in court" because Mason did not have the chance to meaningfully negotiate the agreement's chosen forum. Id. Important to that Court was the unequal bargaining power between the parties and the little notice Mason received about the forum-selection clause. See id. at *2–*3 (Mason was not business savvy, he was financially distressed, and he did not have the power or opportunity to negotiate a different forum).

Mason is distinguishable, however, because Canters Deli is a much different type of plaintiff than Mason. Mason was an individual who did not have the experience to negotiate the forum-selection clause. Canters Deli, on the other hand, is a corporate entity that owned and operated at least two delis. Presumably, Canters Deli had experience with merchant-services agreements and understood that credit-card processors include forum-selection clauses in their agreements. Further, and as Mason acknowledges, the forum-selection clause is not invalid simply because it appeared as part of a form-contract or because the plaintiff did not specifically negotiate those terms. Mason, 2008 WL 4165155 at *2–3 citing Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004).

Additionally, the fact that the Program Guide was a separate document that included multiple dense provisions does not render the clause invalid. Admittedly, the Program Guide—at more than eighty pages—contains a lot of information that would make for dull reading. However, that does not remove from Canters Deli the responsibility to understand the terms of its agreement before signing. Lennar Mare Island, LLC v. Steadfast Ins. Co., 139 F.Supp.3d 1141, 1165 (E.D. Cal. 2015) ("A person who signs a contract has a general duty to read it"); Massey v. Duke Univ., 503 S.E.2d 155, 158 (N.C. App. 1998). Moreover, Canters Deli did not need to read the entire document to learn of the forum-selection clause. It need only look to the Program Guide's table of contents, which disclosed both the forum-selection and choice-of-law provisions. Accordingly, the Court finds that the Bank of America reasonably communicated its forum-selection clause to Canters Deli.

The Court also finds that the forum-selection clause applies to Canters Deli's four claims against Bank of America. The clause applies to "any actions or claims arising under or related to [the merchant-services] Agreement." Program Guide 48, ECF No. 12-1. Any action related to the bank's duties under the agreement must be litigated in the predetermined forum. The deli's claims fall under that umbrella. The deli pleads breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and breach of fiduciary duty claim against the bank. Each claim seeks to hold Bank of America liable for its part in Siretskiy's alleged scheme to funnel Canters Deli profits into his personal account. The deli would not have a single cause of action against Bank of America absent the merchant-services agreement. Therefore, the deli's claims arise under the agreement and must be litigated in the Western District of North Carolina.

    *2. FreedomPay, Inc.'s Forum-Selection Clause*

For substantially the same reasons, the Court finds that FreedomPay's forum-selection clause is valid and that the clause applies to the deli's negligence claim against FreedomPay. FreedomPay's Switching Agreement stated:

> 11.3 **Governing Law/Jurisdiction**. This Agreement, the rights of the Parties, hereunder and all actions arising in whole or in part under or in connection herewith, will be governed by and construed and enforced in accordance with the domestic substantive laws of the Commonwealth of Pennsylvania.

Switching Agreement 6, 17, ECF No. 10-2. Like Bank of America, FreedomPay reasonably communicated the forum-selection clause to Canters Deli. FreedomPay's Switching Agreement is much shorter than Bank of America's Program Guide. The governing law section is bolded and appears at the top of the final page of the agreement. In fact, the forum-selection clause appears on the very page that the parties signed to execute the Agreement. See id. at 5. Canters Deli was aware that the page contained terms and conditions as evidenced by its owner's signature at the bottom of that page.

The clause also applies to Canters Deli's negligence claim against FreedomPay because it governs "all actions arising in whole or in part under or in connection [with the agreement]." Id. Although Canters Deli does not bring a breach of contract claim against FreedomPay, its

negligence claim arises out of the processor's alleged duty to protect the deli's information from Siretskiy. There could not be a negligence claim against FreedomPay without there first being a business relationship between the two parties. That relationship is governed by the Switching Agreement. As a result, the Court finds that FreedomPay adequately communicated its forum-selection clause to Canters Deli and that the clause governs the deli's negligence claim.

### C. Extraordinary Circumstances

Next, the Court must determine whether extraordinary circumstances justify setting aside these valid forum-selection clauses. Under Atlantic Marine, the Court may decline to enforce an otherwise valid forum-selection clause if there is an "exceptional reason" to do so. 571 U.S. at 62. Atlantic Marine, however, gives little guidance on what qualifies as an exceptional reason or circumstance. Yei A. Sun v. Advanced China Healthcare, Inc., 901 F.3d 1081, 1088 (9th Cir. 2018). Thus, the Court is left with Bremen's guidance. Under Bremen, the Court considers the following factors to determine whether extraordinary circumstances effectively void a forum-selection clause: (1) whether the parties' negotiations are tainted with fraud or overreaching; (2) whether strong public policy contravenes enforcing this forum-selection clause; or (3) whether enforcing the clause would effectively deprive the plaintiff of its day in court. 407 U.S. at 12, 15, 18.

Canters Deli argues that these forum-selection clauses are fundamentally unfair because they designate two different venues where two separate courts "will be burdened with the discovery, pretrial motions, and trial of cases based on the same facts." Pl.'s Consol. Resp. 8–9, ECF No. 20. Canters Deli points to Blissfield Mfg. Co. v. Blue H2O Sols., LLC for support. No. 12-15610, 2013 WL 5450289 (E.D. Mich. Sept. 30, 2013). There, a Michigan district court faced a similar issue—whether the practical effect of enforcing competing forum-selection clauses is too inconvenient to enforce either clause. The case involved an alleged breach of a non-competition agreement by four individual defendants. Id. at *1. The former employer brought nine total causes of action, some of which were pleaded against multiple defendants. Id. at *3. The defendants moved to dismiss, citing the valid forum-selection clauses in their respective non-disclosure agreements. Id. at *4. That court found that the forum-selection clauses were

valid but declined to enforce them because the clauses would force the plaintiff "to maintain a minimum of two separate lawsuits which concern the same underlying events" and the defendants "would be required to defend against [certain claims] in two different jurisdictions." Id. at * 5. The court also found that separating the claims between different venues was improper because the core factual allegations against each defendant "would be identical." Id.

Unlike Blissfield, Canters Deli's claims against Bank of America and FreedomPay do not overlap. Stated differently, the deli's claims against Bank of America arise under a separate contract and a different duty of care than does the deli's claim against FreedomPay. These claims are less complex and less intertwined than the claims in Blissfield. There, three separate plaintiffs asserted nine causes of action against five defendants. Many of the claims applied to multiple defendants whose forum-selection clauses mandated separate venues. Canters Deli does not plead the same cause of action against both Bank of America and FreedomPay, and neither processor would be forced to defend the same cause of action in separate venues.

Additionally, because Canters Deli's causes of action do not overlap, there is less risk of inconsistent judgments. Whereas the Blissfield defendants "worked together" to violate their individual non-compete agreements, there is no allegation that both Bank of America and FreedomPay engaged in identical conduct. Nevertheless, Canters Deli argues that enforcing these forum-selection clauses would force two judges to consider the same conduct and determine whether it violated the processors' duties either in contract or in tort. However, there is a legitimate chance that the Court could reach conflicting decisions between these defendants even if the Court retained jurisdiction. After all, the processors' respective liability arises out of their individual contracts with Canters Deli. Their liability turns on the terms in their individual merchant-services agreement. Similarly, the deli's negligence claims turn on a duty of care that each defendant would owe the deli individually. Therefore, while the facts giving rise to this case are similar, they are not identical as was the case in Blissfield.

While the Court is empathetic to the inconvenience that enforcing these forum-selection clauses may create, inconvenience alone does not justify setting aside these valid forum-selection clauses. Bremen is clear that inconvenience must effectively deprive the plaintiff of its day in

court. That will not happen here. Canters Deli can both obey the forum-selection clauses and pursue its day in court. And so, the Court will not reject the forum-selection clauses that Canters Deli agreed to merely because they designate two different jurisdictions.

Accordingly, the Court finds that Canters Deli's claims against Bank of America must be transferred to the Western District of North Carolina, Charlotte Division, under the parties' forum-selection clause. Likewise, the Court finds that Canters Deli's claims against FreedomPay must be transferred to the Eastern District of Pennsylvania. Therefore, the Court **SEVERS** Canters Deli's claim against FreedomPay and orders that the Clerk of the Court **TRANSFER** the claim to the Eastern District of Pennsylvania. The Court further orders the Clerk of the Court to **TRANSFER** Canters Deli's remaining claims against Banc of America Merchant Services, LLC and Bank of America, N.A. to the Charlotte Division of the Western District of North Carolina.

Finally, because the Court elects to transfer this case, it will not reach Bank of America and FreedomPay's remaining arguments under FRCP 12(b)(6).

### IV. <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that defendants' FreedomPay, Inc. and Banc of America Merchant Services, LLC and Bank of America's motions to dismiss or, in the alternative, to transfer venue (## 10, 12), which the Court construed as motions to transfer under 28 U.S.C. § 1404(a) are **GRANTED**;

IT IS FURTHER ORDERED that Canters Deli's negligence claim against FreedomPay, Inc. is hereby **SEVERED** and **TRANSFERRED** to the Eastern District of Pennsylvania;

IT IS FURTHER ORDERED that Canters Deli's remaining claims against Banc of America Merchant Services and Bank of America, N.A. are **TRANSFERRED** to the Charlotte Division of the Western District of North Carolina;

///

///

///

///

///

IT IS FURTHER ORDERED that FreedomPay, Inc.'s stand-alone motion to transfer venue (#30) is **DENIED AS MOOT**.

Dated this the 10th day of July 2019.

_____
Kent J. Dawson
United States District Judge