UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-320-MOC-WCM

| | | |
|---|---|---|
| CANTERS DELI LAS VEGAS, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| BANC OF AMERICA MERCHANT SERVICES, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendants Banc of America Merchant Services, LLC and Bank of America, N.A. (Doc. No. 43).

I.  BACKGROUND

In this action brought by Plaintiffs against Defendants Banc of America Merchant Services, LLC ("BAMS") and Bank of America, N.A. ("BANA"), Plaintiffs bring various claims against Defendants after Mikhail Siretskiy (a non-party) allegedly wrongfully diverted thousands of dollars from Plaintiff's merchant accounts into his own accounts.

Plaintiffs own and operate two deli locations in Las Vegas. (Doc. No. 1 at ¶¶ 12-13). On or about December 6, 2016, Plaintiffs each entered into a contract with Defendants for the purpose of processing credit card transactions. (Id. at ¶ 16). The contracts between Defendants and each Plaintiff consist of a Merchant Processing Application ("MPA") (Doc. No. 1-2 at 2-19) and a "Program Guide." (Doc. No. 12-1). Although each Plaintiff entered into a separate contract with Defendants, they are substantively identical (compare Doc. No. 1-2 at 2-10 (Linq location MPA) with Doc. No. 1-2 at 11-19 (Tivoli location MPA)). The Court therefore refers to

1

both contracts together as the "Canters Contracts."

On or about June 12, 2017, each Plaintiff entered into a separate agreement (the "FreedomPay Contracts") with FreedomPay, Inc. ("FPI"). Under the FreedomPay Contracts, FPI agreed to act as an intermediary between Plaintiffs and Defendants, essentially linking the equipment FPI provided to Plaintiffs with Plaintiffs' merchant accounts with Defendants. (Doc. No. 1 at ¶¶ 19-20; Doc. No. 1-3).

Mikhail Siretskiy is an "indirect" owner of Plaintiffs. That is, he owns High Roller Holding Firm, LLC and Tivoli Holding Firm, LLC, which are, apparently, members of Plaintiffs Canters Deli Las Vegas, LLC and Canters Deli Tivoli Village, LLC, respectively. (Doc. No. 1 at ¶ 14). Plaintiffs allege that each Plaintiff's operating agreement makes clear that Siretskiy has no right to participate in the management or control of either Plaintiff. (Id. at ¶ 15).

In or around June 2018, Siretskiy opened accounts with Defendants BANA and BAMS. (Id. at ¶¶ 21-22). BAMS opened accounts for Canters Deli Tivoli, Inc. and Canters Deli Linq, Inc. See (Doc. No. 44 at ¶ 9: Declaration of Adam Kjeldgaard). These accounts were entirely separate from Plaintiffs' accounts. According to Plaintiffs, Siretskiy falsely claimed to a BAMS representative that he had won a lawsuit against Plaintiffs and that he would be taking over their Las Vegas restaurants. (Doc. No. 1 at ¶ 23). Siretskiy was then able to obtain a "VAR Sheet" from BAMS. (Id. at ¶ 24). A VAR Sheet is an instructions file containing information such as merchant account numbers and bank and deposit accounts associated with those merchant accounts that is provided to a third-party payment gateway, such as FPI. (Id. at ¶ 25).

Siretskiy presented the VAR Sheets to FPI, which began processing Plaintiffs' transactions through the Siretskiy Accounts. (Id. at ¶ 26). From the time the Siretskiy Accounts were first opened, Defendants processed a total of $30,396.24 for Canters Deli Linq, Inc. and

$27,770.50 for Canters Deli Tivoli, Inc. (all amounts exclusive of fees), for a total amount of $58,166.74 that Siretskiy allegedly wrongfully diverted. See (Doc. No. 44 at ¶¶ 26-28). On June 20, 2018, counsel for Plaintiffs spoke to a representative of FPI, who claimed that FPI was merely a third-party intermediary payment processor and implied that the issue must have arisen based on conduct by BAMS and BANA. (Doc. No. 1 at ¶ 28). On June 27, 2018, counsel for Plaintiffs spoke to a BAMS representative, who explained that before Plaintiffs brought this action, no changes has been made to the Canters Accounts, thus implying that the issue must have arisen based on conduct by FPI. (Id. at ¶ 29). BAMS placed a hold on Plaintiffs' Accounts (Doc. No. 1 at ¶ 31), and no transactions have been processed since the placement of the hold. See (Doc. No. 44 at ¶¶ 29).

On October 2, 2018, Plaintiffs filed this lawsuit in the District of Nevada, bringing the following claims against Defendants: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) and breach of fiduciary duty. (Doc. No. 1). Plaintiffs seek both compensatory and punitive damages. Plaintiffs assert in the Complaint that subject matter jurisdiction in federal court is based on diversity of citizenship under 28 U.S.C. § 1332. (Id. at ¶ 9).

On November 9, 2018, Defendants filed a motion to dismiss based, in part, on the fact that the Canters Contracts had a forum selection clause requiring the suit to be brought against BAMA and BANA in North Carolina. (Doc. No. 12). On July 10, 2019, the District of Nevada construed Defendants' motion to dismiss as a motion to transfer pursuant to 28 U.S.C. § 1404(a),

3

and that court granted the motion, transferring this case to this Court.[1] (Doc. No. 36 at 6, 13). Because the District of Nevada granted the motion to transfer, it did not reach Defendants' then-pending motion to dismiss pursuant to Rule 12(b)(6). (Id. at 13).

Defendants now move to dismiss this action without prejudice pursuant to Rule 12(b)(1), on the grounds that Plaintiffs cannot establish that the amount in controversy is in excess of $75,000.00, and that this Court therefore does not have jurisdiction over the subject matter of this dispute. Alternatively, Defendants request that this Court dismiss this action with prejudice pursuant to Rule 12(b)(6) on the grounds that Plaintiffs have failed to state any legally cognizable claims. Defendants filed their motion to dismiss on July 24, 2019, Plaintiffs filed their response in opposition on August 21, 2019, and Defendants filed their Reply on August 28, 2019. Thus, this matter is ripe for disposition.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss Based on Lack of Subject Matter Jurisdiction under FED. R. CIV. P. 12(b)(1)

The Court first addresses Defendants' motion to dismiss for lack of subject matter jurisdiction. Plaintiffs rely on 28 U.S.C. § 1332 as the basis for this Court's jurisdiction. (Doc. No. 1 at ¶ 9). Under Section 1332, federal courts have original jurisdiction over civil actions between citizens of different states if the amount in controversy exceeds $75,000 and complete diversity exists between the parties. See 28 U.S.C. § 1332(a). In their motion to dismiss, Defendants argue that the Court lacks subject matter jurisdiction over this action because the

---

[1] Before this action was transferred, FPI was also a named Defendant. The District of Nevada severed Plaintiffs' claims against FPI and transferred the claims against FPI to the Eastern District of Pennsylvania. (Doc. No. 36).

4

amount in controversy is less than $75,000, as required for diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. No. 25 at 1).

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 553 (2014). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'" JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). To prevail, defendants "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.'" Id. (quoting Wiggins v. N. Am. Equitable Life Assurance Co., 644 F.2d 1014, 1017 (4th Cir. 1981)).

Defendants argue that Plaintiffs cannot meet their burden of showing that they can meet the jurisdictional threshold for several reasons. First, Defendants note that Plaintiffs are contending that Siretskiy allegedly wrongfully diverted at most $58,166.74 to his own bank accounts, less than the jurisdictional amount of $75,000. See (Doc. No. 44 at ¶¶ 26-28). Likewise, Defendants note that, in correspondence attached to the complaint, Plaintiffs repeatedly represent that their collective damages are around $70,000.00. (Doc. No. 1-5 at 4; Doc. No. 1-7 at 5).

Furthermore, Defendants note that the Canters Contracts,[2] which govern the agreement

---

[2] As noted in Defendants' motion, before this action was transferred to this Court, the District of Nevada already determined, and Plaintiffs do not dispute, that the contracts between the parties are "governed by two documents: The Merchant Processing Application and Agreement and the 'Program Guide.'" See (Doc. No. 36 at 2). The District of Nevada further ruled that "the Program Guide . . . outlined the terms and conditions of the merchant-card agreement." (Id.). Likewise, the court held that "[e]ach [of Plaintiffs' claims] seeks to hold Bank of America liable

5

between the parties, expressly limit both the nature and amount of liability to which Defendants are subject. The Program Guide explicitly limits Defendants' liability, stating:

> 21.3. IN NO EVENT SHALL WE OR OUR AFFILIATES OR ANY OF OUR OR THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, <u>PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES</u>, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER ANY PARTY OR ANY PERSON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. CLIENT ACKNOWLEDGES AND AGREES THAT PAYMENT OF ANY EARLY TERMINATION FEE OR LIQUIDATED DAMAGES, AS PROVIDED ELSEWHERE IN THIS AGREEMENT, SHALL NOT BE PROHIBITED BY THIS SECTION 21.3.

(Doc. No. 12-1 at 21, ¶ 21.3 (capitalization in original) (emphasis added).

Based on the liability limitations in the Canters Contracts, Defendants contend that Plaintiffs cannot seek to increase their damages calculation by relying on punitive damages, lost profits, consequential damages, or the like, but are limited to—at most—their actual direct damages. Defendants contend, therefore, that under the parties' contractual limitations on liability and damages, Plaintiffs cannot meet their jurisdictional burden of showing that the amount in controversy exceeds $75,000.

Specifically, as to Plaintiffs' punitive damages claim, Defendants note that the only reference in the complaint to any amount in excess of $75,000 is Plaintiffs' recitation of their demand. <u>See, e.g.</u>, (Doc. No. 1 at ¶¶ 9, 41, 51, 57, 62). Citing <u>Matt v. Fifth Third Bank, Inc.</u>, No. 5:18-CV-101-BR, 2018 WL 3846310, at *3 (E.D.N.C. Aug. 13, 2018), Defendants argue

---

for its part in Siretskiy's alleged scheme to funnel Canters Deli profits into his personal account. The deli would not have a single cause of action against Bank of America absent the merchant-services agreement." (<u>Id.</u> at 10).

6

that Plaintiffs cannot rely solely on their demand for punitive damages to meet the amount in controversy. Id. (stating that "[o]ther courts have repeatedly ruled that a demand for punitive damages, without more, is insufficient to establish that the amount in controversy exceeds $75,000.") (citing cases). Defendants additionally contend that, in any event, the Canters Contracts specifically bar any claim for punitive damages. (Doc. No. 12-1 at 21, ¶¶ 21.3-21.4). Defendants contend that the only allegations of wrongful intent in the Complaint are the bare conclusory statements that "the acts as described herein were intentional, oppressive, fraudulent, and/or malicious," (Doc. No. 1 at ¶ 63), and a request for punitive damages for Defendants' "intentional, oppressive, fraudulent, and/or malicious conduct as described herein. . . ." (Id. at ¶ 6). Defendants contend that Plaintiffs fail to allege any facts that would give rise to a claim for gross negligence or any intentional torts that would give rise to a punitive damages claim.

Defendants note, additionally, that the Program Guide goes on to expressly limit the amount of any damages to $50,000:

> 21.4. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY (INCLUDING, BUT NOT LIMITED TO, SECTIONS 27), OUR CUMULATIVE LIABILITY FOR ALL LOSSES, CLAIMS, SUITS, CONTROVERSIES, BREACHES AND DAMAGES FOR ANY CAUSE(S) WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, THOSE ARISING OUT OF OR RELATED TO THIS AGREEMENT), REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY, SHALL NOT EXCEED, (I) $50,000; OR (II) THE AMOUNT OF FEES RECEIVED BY US PURSUANT TO THIS AGREEMENT FOR SERVICES PERFORMED IN THE IMMEDIATELY PRECEDING TWELVE (12) MONTHS, WHICHEVER IS LESS.

(Id. at ¶ 21.4 (capitalization in original) (emphasis added)). Defendants contend, therefore, that the cumulative remedy for all of Plaintiffs' claims is limited to a maximum of $50,000, well

below the jurisdictional threshold.[3]

This Court will deny the motion to dismiss for lack of subject matter jurisdiction, as the Court cannot find, with legal certainty, that Plaintiffs cannot meet the threshold of $75,000. Significantly, the Court notes that the Fourth Circuit has not addressed whether a district court may consider a limitation of liability clause when assessing the amount in controversy requirement for purposes of a Rule 12(b)(1) motion. See Microstrategy Servs. Corp. v. Openrisk, LIC, No. 1:14-cv-1244, 2015 WL 3774485, at *4 (E.D. Va. June 17, 2015) (declining to rule on that question "[w]ithout any guidance from the Fourth Circuit"). Moreover, other circuits are split on this question. Compare Pratt Central Park Ltd. P'ship v. Dames & Moore, Inc., 60 F.3d 350, 354 (7th Cir. 1995) (holding that where contractual liability cap is lower than jurisdictional amount, the case must be dismissed under Rule 12(b)(1)), with Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982) (holding that contractual liability caps cannot be considered under Rule 12(b)(1), since contractual damages caps are "affirmative defenses").

Here, the Court is constrained to hold that because of the uncertainty about whether a limitation of liability clause can properly be considered at the Rule 12(b)(1) stage, Defendants cannot meet their heavy burden of showing to a legal certainty that the Canter Contracts' limitation of liability clauses prevent Plaintiffs from recovering the damages amount claimed. Accord Stewart Title Guar. Co. v. Closure Title & Settlement Co., LLC, No. 3:18-CV-00058, 2019 WL 97045, at **4–5 (W.D. Va. Jan. 3, 2019).

In sum, for the reasons stated herein, Defendants' motion to dismiss for lack of subject

---

[3] Additionally, Defendants contend that Plaintiffs are not permitted to aggregate their claims to meet the statutory threshold. See Glover v. Johns-Manville Corp., 662 F.2d 225, 231 (4th Cir. 1981) (citing Zahn v. Int'l Paper Co., 414 U.S. 291, 293-96 (1973)).

matter jurisdiction is denied.

### B. Defendants' Motion to Dismiss Based on Failure to State a Claim under FED. R. CIV. P. 12(b)(1)

The Court next addresses Defendants' alternative motion to dismiss under Rule 12(b)(6) for failure to state a claim. Defendants contend that Plaintiffs' negligence and breach of fiduciary duty claims are barred by the economic loss rule and Plaintiffs have failed to state a legally cognizable claim for the existence of a fiduciary relationship between the parties. Defendants also move to dismiss Plaintiffs' claims of breach of contract and breach of the implied covenant of good faith and fair dealing on the grounds that these claims are foreclosed by the explicit language of the contracts between the parties.

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). The Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

The Court finds that, construing all inferences in Plaintiffs' favor and taking the allegations as true, Plaintiffs' allegations are sufficient to withstand the motion to dismiss under the liberal pleading standards articulated in Iqbal and Twombly. The Court will deny the motion to dismiss pending further development of the record.

### III. CONCLUSION

Defendants' Rule 12(b)(1) motion to dismiss is denied for the reasons stated herein. Defendants' Rule 12(b)(6) motion to dismiss is denied pending further development of the record, and the Court will issue a ruling after discovery and the parties' filing of summary judgment motions.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Dismiss, (Doc. No. 43), is **DENIED**.

Signed: October 8, 2019



Max O. Cogburn Jr
United States District Judge